1
2
3
4
5

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

BRANDAN MARIE PRYOR,

       Plaintiff,

       v.

CAROLYN W. COLVIN,
Commissioner of Social Security,

       Defendant.

No. 2:14-CV-00065-RHW

ORDER GRANTING IN PART
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT

**BEFORE THE COURT** are cross-motions for summary judgment.  ECF
Nos. 18, 20.  Attorney Jeffrey Schwab represents Brandan Marie Pryor (Plaintiff);
Special Assistant United States Attorney Leisa A. Wolf represents the
Commissioner of Social Security (Defendant).  After reviewing the administrative
record and the briefs filed by the parties, the Court **GRANTS, in part,** Plaintiff's
Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary
Judgment; and **REMANDS** the matter to the Commissioner for additional
proceedings pursuant to 42 U.S.C. § 405(g).

## JURISDICTION

On October 26, 2010, Plaintiff filed applications for Supplemental Security
Income (SSI) and Disability Insurance Benefits (DIB), alleging disability since
September 1, 2009.  Tr. 269-77, 278-83.  The applications were denied initially

and upon reconsideration.  Tr. 108-39, 144-77.  Administrative Law Judge (ALJ) R.J. Payne held a hearing on April 10, 2012, Tr. 39-63, at which Plaintiff, represented by counsel, testified as did medical experts Arthur Lorber, M.D. and Ellen Rozenfeld, Ph.D.  A supplemental hearing was held on October 16, 2012, at which vocational expert (VE) Daniel McKinney, Sr. testified; Plaintiff testified by telephone.  Tr. 64-105.  The ALJ issued an unfavorable decision on November 2, 2012.  Tr. 18-38.  The Appeals Council denied review.  Tr. 1-7.  The ALJ's November 2012 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review on March 10, 2014.  ECF Nos. 1, 3.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties.  They are only briefly summarized here.

Plaintiff was 27 years old at the time of the April 2012 hearing.  Tr. 271. Plaintiff graduated from high school.  Tr. 78.  Plaintiff last worked at a bakery/deli for a period of six months.  Tr. 46-47, 74.  At first she worked full time, but her employer reduced her hours when the employer "noticed that [the work] was very hard on [her]," and she was laid off a week prior to the April 10, 2012 hearing.  Tr. 46-47, 74-75.  Plaintiff has also worked as a cashier, secretary, and fast food cook. Tr. 92, 315.

At the October 16, 2012 hearing, Plaintiff testified that she was enrolled at a community college and went to class one hour a day, five days a week.  Tr. 76. Plaintiff stated she did not have difficulty meeting the attendance requirements, but sitting in class hurts her hips.  Tr. 77.

Plaintiff testified that she sometimes has hallucinations.  Tr. 74.  During a psychotic breakdown in April 2012, she testified that she thought she was being followed/harassed by satellites and thought people were watching and talking to

her.  Tr. 69.  When Plaintiff reads, she hears voices in her head.  Tr. 95.  Plaintiff testified that she feels like crying all the time.  Tr. 83.  Plaintiff also testified that she has pain in her lower back and tail bone area.  Tr. 90.  Plaintiff's hips feel strained and pressured when sitting and standing.  Tr. 90.

On a typical day, Plaintiff attends community college for an hour and usually has some kind of medical appointment.  Tr. 78.  Plaintiff sometimes socializes with her daughter's father or her ex-boyfriend.  Tr. 80.  Plaintiff has two children, but at the time of the hearing, family members were caring for the children and Plaintiff had to be supervised during visits with the children.  Tr. 73, 83.  Plaintiff testified that she would like to return to work doing a job that "wasn't too physically strenuous on [her] body."  Tr. 86.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes.  *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).  The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error.  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance.  *Id*. at 1098.  Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ.  *Tackett*, 180 F.3d at 1097.  Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.  *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).  If substantial evidence

supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon claimants to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once claimants establish that physical or mental impairments prevent them from engaging in their previous occupations. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If claimants cannot do their past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimants can make an adjustment to other work, and (2) specific jobs exist in the national economy which claimants can perform. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If claimants cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(i-v), 416.920(a)(4)(i-v).

## ADMINISTRATIVE DECISION

On November 2, 2012, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act. Preliminarily, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through September 30, 2010. Tr. 23.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since September 1, 2009, the alleged onset date. Tr. 23.

At step two, the ALJ determined Plaintiff had the following severe impairments: degenerative disk disease of the lumbar spine, depressive disorder, posttraumatic stress disorder (PTSD), pain disorder, and substance abuse. Tr. 23.

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 4

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  Tr. 26.

At step four, the ALJ determined that Plaintiff had the residual function capacity (RFC) to perform sedentary work except

> She is only able to sit, stand, or walk for 30 minutes at a time, occasionally stoop, crouch, kneel, or climb ramps and stairs, and never crawl, balance, or climb ladders, ropes, or scaffolds.  She can lift 20 pounds occasionally, and 10 pounds frequently.  She should avoid concentrated exposure to strong vibrations and unprotected heights.  [Plaintiff] is capable of understanding and remembering simple (repetitive, 1-3 step tasks), but she may have increased difficulty as task complexity increases.  She is capable of working around others superficially, but would likely have difficulty as social demands or complexity increases.  [Plaintiff] is capable of superficial social interactions with the general public and coworkers, but she would likely have increased difficulty as social complexity increases. She would be capable of responding appropriately to supervision.

Tr. 27-28.  The ALJ concluded that Plaintiff was unable to perform any past relevant work.  Tr. 31.

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience and RFC, and based on the testimony of the VE, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of cashier II, small parts/products assembler, small parts and product inspector, and hand bander.  Tr. 32-33.  The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from September 1, 2009 through the date of the ALJ's decision.  Tr. 33.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal

standards.  Plaintiff contends the ALJ erred by (1) improperly rejecting the opinions of Plaintiff's treating and examining medical providers; (2) improperly rejecting Plaintiff's subjective complaints, and (3) failing to make an adequate step five finding that Plaintiff can perform other work despite her specific functional limitations.

**DISCUSSION**

**A.    Credibility**

Plaintiff contests the ALJ's adverse credibility determination.  ECF No. 18 at 21-25.

It is generally the province of the ALJ to make credibility determinations, *Andrews*, 53 F.3d at 1043, but the ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing."  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).  "General findings are insufficient:  rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).

The ALJ found Plaintiff not fully credible concerning her reporting of the intensity, persistence, and limiting effects of her symptoms to the extent her reporting was inconsistent with the ALJ's RFC determination.  Tr. 29.  The ALJ reasoned that Plaintiff was less than credible because her symptom reporting was contrary to the medical evidence, her activities of daily living, and the fact that she was able to work during the period of alleged disability.  Tr. 29.  The ALJ further noted inconsistencies in Plaintiff's reporting of substance abuse and the fact that her doctors did not prescribe her pain medication.  Tr. 29.

**1.  Contrary to the objective medical evidence**

The ALJ noted that "there are some inconsistencies between [Plaintiff's] statements and the objective medical evidence." Tr. 29.

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 6

Although it cannot serve as the sole ground for discrediting a claimant, objective medical evidence is a "relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ summarized the medical evidence in his RFC determination, but did not specify inconsistencies between the medical evidence and Plaintiff's symptom reporting. The Court is not permitted to "comb the administrative record to find specific conflicts." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014). The ALJ's conclusion that the objective medical evidence is inconsistent with Plaintiff's reporting is not a specific, clear, and convincing reason to discredit Plaintiff.

**2. Daily activities**

The ALJ noted that Plaintiff was a full time student in 2010 and attended community college part time at the time of the hearing. Tr. 29 (citing Tr. 592). The ALJ concluded that attending classes required many of "the same skills as full-time work, such as concentration, time management, social skills, and mental acuity." Tr. 29. The ALJ also noted Plaintiff was able to keep house, take care of two small children, ride her bike, socialize, and take a six hour bus ride. Tr. 29 (citing Tr. 564, 1047).

A claimant's daily activities may support an adverse credibility finding if (1) the claimant's activities contradict his or her other testimony, or (2) "the claimant is able to spend a substantial part of his day engaged in pursuits involving performance of physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). "The ALJ must make 'specific findings relating to [the daily] activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Id.* (quoting *Burch v. Barnhart,* 400

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 7

F.3d 676, 681 (9th Cir. 2005)).  A claimant need not be "utterly incapacitated" to be eligible for benefits.  *Fair*, 885 F.2d at 603.

The ALJ's citation to Plaintiff's activities is partially a specific, clear, and convincing reason to discredit Plaintiff.

The ALJ did not err in reasoning that Plaintiff's ability to take community college classes evidences that Plaintiff possesses skills that would transfer to full time work, such as "concentration, time management, social skills, and mental acuity."  Tr. 29.  This finding is supported by substantial evidence.  *See* Tr. 77-78 (Plaintiff testifying that she does not have problems understanding the coursework or with regular school attendance).

The ALJ erred in finding that Plaintiff can keep house and take care of her two small children.  In support of this finding, the ALJ cited to Tr. 564 (Exhibit No. 9F/40).  Tr. 29.  This document is a report made by Plaintiff's case worker after she stopped by Plaintiff's apartment to drop off a Christmas basket.  Plaintiff was not at home, but Plaintiff's four year old daughter let the case worker into Plaintiff's apartment.  Tr. 564.  The case worker observed, "the house was a mess, there was no food in the cupboards, and both of the kids were [unattended and] awake sitting on the couch."  Tr. 564.  No reasonable interpretation of this report would lead to conclusion that Plaintiff can keep house and take care of her children as found by the ALJ.  Given that the ALJ failed to cite to evidence that indicates Plaintiff is capable of household chores and taking care of her children, this is not a specific, clear, and convincing reason to discredit Plaintiff.

The ALJ also erred in using Plaintiff's reports of riding her bike and taking a long distance bus ride to discredit her.  Only one report in the voluminous record, a mere scintilla of evidence, supports the Plaintiff rides her bike.  Tr. 1047.  Likewise, Plaintiff did take a long distance bus ride, Tr. 89, but the ALJ fails to point to how this is inconsistent with Plaintiff's symptom reporting or involved tasks that would transfer to a work setting.  The ALJ erred in citing Plaintiff's

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 8

ability to ride a bike and the bus as a reason to discredit her.  *See Fair*, 885 F.2d at 603 (A claimant need not be "utterly incapacitated" to be eligible for benefits).

### 3.  Work during period of alleged disability

The ALJ noted that, for a period of six months, Plaintiff was able to do work that required standing all day and lifting thirty pounds.  Tr. 29.

Generally, a claimant's ability to work can be considered in assessing credibility.  *Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009).  But the fact that a claimant "tried to work for a short period of time and, because of his impairments, *failed*," should not be used to discredit the claimant. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038-39 (9th Cir. 2007).  In fact, evidence that a claimant tried to work and failed may support the claimant's allegations of disabling pain.  *Id.* at 1038; *see also Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005) (noting the fact that the claimant sought employment "suggests no more than that he was doing his utmost, in spite of his health, to support himself.").

The ALJ erred in citing Plaintiff's attempts at working to discredit Plaintiff. Plaintiff testified that she was laid off from this work because her impairments prevented her from completing her job tasks.  Tr. 46-47, 74-76.  There is no evidence that Plaintiff stopped working at this job for other reasons. The fact that Plaintiff tried to work for a short time but failed because of her impairments tends to support Plaintiff's allegations of disabling pain.  *Lingenfelter*, 504 F.3d at 1038. The ALJ erred in using Plaintiff's work attempt to discredit Plaintiff.

### 4.  Inconsistent statements about substance abuse

The ALJ noted that Plaintiff testified that she last used methamphetamine four to five months prior to the October 2012 administrative hearing, but treatment notes indicate that she last used methamphetamine in August 2012.  Tr. 29.

An ALJ may consider evidence of a claimant's substance use in assessing credibility.  *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (ALJ's finding that claimant was not a reliable historian regarding drug and alcohol usage

supports negative credibility determination); *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (conflicting or inconsistent testimony concerning alcohol or drug use can contribute to an adverse credibility finding).

The ALJ did not err in citing Plaintiff's inconsistent reporting of her drug use as a reason to discredit her. At the October 2012 hearing, Plaintiff testified that she last used methamphetamine about four months prior to the hearing (or approximately May-June 2012). Tr. 70. But, as noted by the ALJ, a therapy note dated August 21, 2012 states that Plaintiff had "used meth two or three days ago." Tr. 1019. Plaintiff argues that "a few months discrepancy" in Plaintiff reporting is not a clear and convincing reason to discredit Plaintiff. ECF No. 18 at 23. The Court is inclined to agree with Plaintiff, but must defer to the ALJ's judgment in this instance. *See Tackett*, 180 F.3d at 1097 (if the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ). Even a minor inconsistency may be grounds to question a claimant's credibility, especially inconsistencies relating to a claimant's drug use, which could impact whether the claimant is eligible for Social Security benefits. Plaintiff's inconsistent reports of her drug use is a specific, clear, and convincing reason to discredit her.

### 5. Failure to use pain medication

The ALJ noted that Plaintiff had not "been prescribed medication for the relief of pain" and that Plaintiff treated her pain with over-the-counter medication. Tr. 29. From these facts, the ALJ inferred that Plaintiff's doctors did not think Plaintiff's pain warranted the use of prescription medication. Tr. 29.

Unexplained or inadequately explained reasons for failing to seek medical treatment cast doubt on a claimant's subjective complaints. 20 C.F.R. §§ 404.1530, 416.930; *Fair*, 885 F.2d at 603. A claimant's subjective pain testimony may be discounted by the fact that the claimant did not take pain medication. *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996).

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 10

The ALJ erred in reasoning that Plaintiff's failure to take pain medication suggested that Plaintiff's doctor's believed that her pain "[did] not warrant such intervention." Tr. 29. Contrary to the ALJ's reasoning, the record indicates that Plaintiff's treating sources did prescribe her pain medication. At various times, Dr. Kirkham treated Plaintiff with Toradol, morphine, Zofran, and Vistaril, Tr. 835, 838, and prescribed medications including Ultracet, Darvocet-N, Nabumetone, and Voltaren. Tr. 831, 834, 836-40. In April 2012, Dr. Kirkham opined that medication might address Plaintiff's back pain. Tr. 967. Furthermore, Plaintiff's treating sources apparently considered use of opioid medication, but determined that it was "not a good choice" for Plaintiff. Tr. 832. Substantial evidence does not support the ALJ's conclusion that Plaintiff's treating sources did not prescribe her pain medication because they did not believe such medication warranted.

### 6. Conclusion

Most of the reasons underlying the ALJ's adverse credibility finding are unsupported or based on legal error. As discussed *infra*, the Court also concludes that remand is appropriate for the ALJ to reevaluate the medical evidence and make other findings, if necessary. Upon reevaluation of the medical evidence, the ALJ should also reevaluate Plaintiff's credibility consistent with this Order.

### B.   Evaluation of Medical Evidence

Plaintiff argues the ALJ improperly rejected the opinions of her examining mental health providers, including Thomas Genthe, Ph.D., Aaron R. Burdge, Ph.D., and Mark Duris, Ph.D. as well as treating provider Brian Kirkham, M.D. ECF No. 18 at 15-21.

"In making a determination of disability, the ALJ must develop the record and interpret the medical evidence." *Howard ex. rel. Wolff v. Barhart*, 341 F.3d 1006, 1012 (9th Cir. 2003).

In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the

claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester*, 81 F.3d at 830. The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician. *Orn*, 495 F.3d at 631. The ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician. *Id.*

When a physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). When a physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion of the first physician. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

To the extent that Drs. Genthe, Burdge, Duris, and Kirkham concluded that Plaintiff was disabled, their opinions are contradicted by the testifying medical experts and reviewing State agency doctors. *See* Tr. 43-56 (Arthur Lorber, M.D.), 56-62 (Ellen Rozenfeld, Ph.D.), 142-59, 160-77 (Edward Beaty, Ph.D. and Alfred Scottolini, M.D.). Therefore, the ALJ was required to provide specific and legitimate reasons for rejecting the opinions finding Plaintiff disabled.

### 1. Thomas Genthe, Ph.D., Aaron R. Burdge, Ph.D., and Mark Duris, Ph.D.

Dr. Genthe completed a psychological evaluation of Plaintiff in June 2008. Tr. 373-89. Dr. Genthe diagnosed Plaintiff with Polysubstance Dependence, in unknown remission; Marijuana Abuse; Eating Disorder, NOS; Mood Disorder, NOS. Tr. 374. Dr. Genthe assessed Plaintiff with no more than moderate cognitive and social functional limitations. Tr. 375. Dr. Genthe concluded that

///

///

Plaintiff presented with an overall normal mental status. Her responses did not suggest any significant impairment in her ability to understand, remember, and carry out simple instructions. Her ability to understand, remember and carry out more complex instructions, such as multi-tasking or multiple-step task, was assessed as relatively unimpaired . . . [Plaintiff] presented with adequate attention span. Her capacity to focus and stay on task appeared to be intact. Her capacity to continue with low-level attentional surveillance over an extended period of time (vigilance) appears to be sufficiently long to permit the timely and appropriate completion of tasks commonly found in at least simple and repetitive work settings.

Tr. 380.

Dr. Genthe completed a second psychological evaluation of Plaintiff in February 2011. Tr. 511-18. Dr. Genthe diagnosed Plaintiff with Pain Disorder Associated with Psychological Features and a General Medical Condition; Major Depressive Disorder, Recurrent; PTSD; Cannabis Dependence; Methamphetamine Dependence, in full sustained remission; Alcohol Dependence, in full-sustained remission; and, Personality Disorder, NOS (with borderline features). Tr. 517. Dr. Genthe found Plaintiff's social and cognitive abilities were "good" or "fair." Tr. 517. Dr. Genthe concluded that, at the time of the evaluation, Plaintiff was "unlikely to be able to function adequately in a work setting until her symptoms have been managed more effectively." Tr. 517.

Dr. Duris completed a psychological evaluation of Plaintiff in November 2010. Tr. 503-10. Dr. Duris diagnosed Plaintiff with Major Depressive Disorder, Recurrent; PTSD; Agoraphobia without a history of Panic Disorder; Social Phobia; Intermittent Explosive Disorder; Centralized Anxiety Disorder; Cannabis Dependence (current); Methamphetamine Dependence in Early Full Remission (2 months); Alcohol Dependence in Sustained Full Remission; and, Borderline Personality Disorder. Tr. 507. Dr. Duris assessed Plaintiff with a number of moderate and marked social and cognitive limitations. Tr. 508. Dr. Duris also

found Plaintiff was severely limited in her abilities to communication and perform effectively in a work setting with public contact, to communicate and perform effectively in a work setting with limited public contact, and to maintain appropriate behavior in a work setting.  Tr. 508.

Dr. Burdge completed a psychological evaluation of Plaintiff in May 2012. Tr. 986-97.  Dr. Burdge diagnosed Plaintiff with Anxiety Disorder, NOS; Major Depressive Disorder, Recurrent, Moderate; Pain Disorder Associated with Both Psychological Factors and a General Medical Condition; Borderline Personality Disorder; and, a number of substance abuse disorders.  Tr. 990, 993. Dr. Burdge opinioned that Plaintiff was "unlikely to function adequately in a work setting until her psychological symptoms have been managed more effectively."  Tr. 991.  Dr. Burdge assessed Plaintiff with a number of nonexertional limitations.  Tr. 991.  Dr. Burdge found Plaintiff moderately limited in her ability to perform activities within a schedule and maintain regular punctual attendance, perform routine tasks without undue supervision, adapt to changes in a routine work setting, ask simple questions or request assistance, and set realistic goals and plan independently.  Tr. 991.  Dr. Burdge found Plaintiff markedly limited in her ability to communicate and perform effectively in a work setting with limited public contact, maintain appropriate behavior in a work setting, and complete a normal workday and workweek without interruptions from psychologically based symptoms.  Tr. 991.

The ALJ gave little weight to the evaluations of Drs. Genthe, Burdge, and Duris.  Tr. 31.  The ALJ reasoned that each of these doctors evaluated Plaintiff on only one occasion "in a secondary gain context."  Tr. 31.  The ALJ specified that these evaluations were "liberally done to ensure Department of Social and Health Services [(DSHS)] benefits to the needy."  Tr. 31.  The ALJ also noted that the evaluations "were substantially based on what [Plaintiff] related to [the doctors]." Tr. 31.  The ALJ further noted that the evaluations were made using "check-box form reports prepared for [DSHS]."  Tr. 31.  Finally, the ALJ reasoned that DSHS

definitions and standards differ from definitions and standards used by the Social Security Administration (SSA).  Tr. 31.

The ALJ failed to provide specific and legitimate reasons for rejecting these four evaluations.  First, the fact that Plaintiff sought the evaluations for purposes of obtaining benefits is not a reason for rejecting them.  *See Lester*, 81 F.3d at 832. ("[T]he purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them.").  Second, there is no indication that these reports were "liberally done" to help Plaintiff obtain benefits or unduly relied on Plaintiff's incredible self-reporting.  The evaluations are supported by psychological testing, mental status exams, and are based on the doctors' professional expertise.  Third, none of these evaluations consist solely of "check-off forms," as found by the ALJ.  To the contrary, these four evaluations contain lengthy narrative reports and document numerous psychological tests administered to Plaintiff.  Finally, the fact that definitions of limitations used by DSHS differ from SSA definitions used for assessing mental disorders is not a specific and legitimate reason to reject opinions rendered by an acceptable medical source. *Accord Martin v. Astrue*, 2011 WL 3626771, at *10 (E.D. Wash. Aug. 17, 2011) (noting that "differences [between the DSHS definitions and SSA definitions] reduce the value of an opinion based on the DSHS definitions" and concluding that the discrepancies are a germane reason to reject the opinions of "other" sources). The ALJ failed to give specific and legitimate reasons for rejecting these evaluations.

On remand, the ALJ shall credit the opinions of Drs. Genthe, Burdge, and Duris or give specific and legitimate reasons for rejecting them.

**2.  W. Brian Kirkham, M.D.**

Dr. Kirkham was Plaintiff's primary care physician.  In August 2010, Dr. Kirkham completed paperwork for Plaintiff's application for State benefits.  Tr. 490-92.  Dr. Kirkham opined that Plaintiff's back pain limited her to sedentary

work and she would only be able to work 11-20 hours a week.  Tr. 490-91.  Dr. Kirkham noted that excessive walking, lifting greater than twenty pounds, bending, and stooping would aggravate Plaintiff's pain.  Tr. 490.  In an August 2010 treatment note, Dr. Kirkham opined that Plaintiff would likely need back surgery and that she should make an appointment with specialist Hank Vejvoda, M.D.[1]  Tr. 836.  In April 2012, Dr. Kirkham completed additional paperwork for Plaintiff's application for State benefits.  Tr. 966-68.  Dr. Kirkham made observations similar to those he made in the August 2010 paperwork and again concluded that Plaintiff was limited to sedentary work.  Tr. 967.

The ALJ generally gave "great weight" to Dr. Kirkham's opinions, but gave less weight to Dr. Kirkham's opinion that Plaintiff is only capable of part time sedentary work.  Tr. 30 (citing Tr. 490-92, 967).  The ALJ reasoned this opinion was "without substantial support from the other evidence of record."  Tr. 30.  The ALJ also discussed situations in which treating doctors might provide opinions consistent with a patient's reporting, either out of sympathy or a patient's insistence.  Tr. 30.  The ALJ suggested that these reasons may have influenced Dr. Kirkham's opinions.  Tr. 30.

The ALJ gave at least one specific and legitimate reason for rejecting Dr. Kirkham's opinion regarding Plaintiff's limitation to part time sedentary work and any error is harmless.  Inconsistency with the majority of the medical evidence is a specific and legitimate reason for rejecting a doctor's opinion.  *Batson*, 359 F.3d at 1196.  As noted by the ALJ, the majority of the evidence supporting Plaintiff's physical impairments does not support the degree of severity found by Dr. Kirkham.  *See*, *e.g.*, Tr. 52 (Dr. Lober opining Plaintiff capable of light work with

---

[1]At a November 2010 appointment, Dr. Vejvoda concluded that "[s]urgery is not going to help [Plaintiff]."  Tr. 501.  Dr. Vejvoda also concluded that Plaintiff was capable of light work.  Tr. 488.

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 16

some restrictions), 488 (Dr. Vejvoda opining that Plaintiff was capable of light work). And other than Dr. Kirkham's opinion, no other medical evidence supports that Plaintiff's physical impairments limit her to part time work. The ALJ's comments concerning possible bias in the opinions of treating sources are not specific and legitimate reasons for rejecting Dr. Kirkham's opinions. This reasoning is general, unfounded, and contrary to the rule that a treating physician's opinion is "entitled to deference," even when contradicted by other opinions. *Orn*, 495 F.3d at 633 (citing SSR 96-2p at 4, 61 Fed. Reg. at 34,491). But even if some of the ALJ's reasoning was flawed, any error is harmless because the ALJ's RFC determination limited Plaintiff to sedentary work with a number of restrictions. Tr. 27-28. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (An error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination.").

## C.   RFC and Hypothetical Questions

Plaintiff argues that the ALJ's hypothetical questions to the VE did not account for all of Plaintiff's limitations, particularly the nonexertional mental limitations assessed by Plaintiff's examining doctors and Dr. Kirkham's opinion that Plaintiff could only work part time. ECF No. 18 at 25-26. As discussed *supra*, the Court finds the ALJ did not err in rejecting Dr. Kirkham's opinion that Plaintiff is only capable of part time work. But the Court finds remand necessary for the ALJ to reassess Plaintiff's credibility and to reevaluate the opinions of Drs. Genthe, Burdge, and Duris, all of which assess Plaintiff with significant nonexertional limitations. Depending on the ALJ's evaluation of the medical evidence and Plaintiff's credibility, the ALJ may need to modify his RFC determination and pose additional hypothetical questions to a VE taking into account additional limitations.

**REMEDY**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAlliser v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Secretary of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome," *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990). *See also Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014) (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

In this case, it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated. Further proceedings are necessary for the ALJ to reevaluate Plaintiff's credibility and the medical evidence. Additionally, Plaintiff has been diagnosed with a number of substance abuse disorders and she continued to use drugs during her period of alleged disability. If the ALJ concludes that Plaintiff is disabled, the ALJ should analyze whether Plaintiff's drug abuse is a contributing factor material to her disability. *See* 42 U.S.C. §§ 423(d)(2)(C) & 1382(a)(3)(J); *Bustamante v. Massanari*, 262 F.3d 949 (9th Cir. 2001).

**CONCLUSION**

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is not supported by substantial evidence and is based on legal error. At the new administrative hearing, the ALJ, if warranted, shall elicit the testimony of a medical expert to assist the ALJ in formulating a new RFC determination. The ALJ shall present the new RFC assessment to a VE to help determine if Plaintiff is capable of performing any other work existing in sufficient numbers in the national economy.  Accordingly, **IT IS ORDERED:**

1.     Defendant's Motion for Summary Judgment, **ECF No. 20**, is **DENIED**.

2.     Plaintiff's Motion for Summary Judgment, **ECF No. 18**, is **GRANTED, in part**, and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

3.     Application for attorney fees may be filed by separate motion.

4.     The District Court Executive is directed to enter judgment in favor of Plaintiff and against Defendant.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel and **close the file**.

**DATED** this 11th day of August, 2015.


_s/Robert H. Whaley_
ROBERT H. WHALEY
Senior United States District Judge

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 19